Herbert F. PARKS, d/b/a Parks Manufac-
turing Company, Plaintiff,

v.

UNITED STATES of America,
Defendant and Third-party
Plaintiff,

v.

STATE OF NEW YORK, Third-party
Defendant.

Civ. A. No. 9579.

United States District Court
N. D. New York.

April 15, 1965.

Albert L. Lawrence, Herkimer, N. Y.,
for plaintiff.

Justin J. Mahoney, U. S. Atty., Albany,
N. Y., for defendant and third-party
plaintiff, United States of America,
Frank A. Dziduch, Asst. U. S. Atty.,
John G. Laughlin, M. M. Heuser, Attys.,
Dept. of Justice, Washington, D. C., of
counsel.

Louis J. Lefkowitz, Atty. Gen., State
of New York, Albany, N. Y., for third-
party defendant, State of New York,
Arthur W. Mattson, Asst. Atty. Gen.,
Grace K. Banoff, Associate Atty., of
counsel.

JAMES T. FOLEY, Chief Judge.

Ordinarily, nothing could be more rou-
tine and simple than a motion to dismiss
a third-party complaint served pursuant
to Rule 14(a) of the Federal Rules of
Civil Procedure. However, this motion
by the State of New York, impleaded as

a third-party defendant by the United States in this Federal Tort Claims action commenced against it, the government, by a citizen and resident of New York, presents in my judgment a question of serious import. Involved for interpretation and application to reach decision are actually federal constitutional and statutory provisions of historical significance and importance in relation to the recognized immunity of States from federal court suits brought by its own citizens as well as by citizens of another State. (Eleventh Amendment, U.S. Const.; Parden v. Terminal Ry. of Ala., etc., 377 U.S. 184, 186, 84 S.Ct. 1207, 12 L.Ed.2d 233).

The factual background of the litigation, at least, is simple. The tort claims complaint seeks from the United States $100,000.00 for property damage, business income and profit loss resulting from alleged inundation and flooding of plaintiff's property in the Village of Herkimer, N. Y. Such damage and loss are claimed to have occurred by reason of the negligent and careless acts of the United States, its agents, servants and employees, particularly through its Corps of Engineers, in the construction, maintenance and operation of the Herkimer Flood Control Project. The charges in the main complaint are aimed directly at alleged failures of government employees in design, supervision and control of the works constructed for diversion of water to obtain protection from flood. The third-party claim is based upon a written agreement of assurance of local interest and cooperation executed by the Superintendent of Public Works for New York, in which, among other detailed promises by the State to assist the federal undertaking the State of New York assures the Secretary of the Army it "will hold and save the United States free from damage due to the construction works * * *". This type indemnity promise is usually the classic and unquestioned basis for institution of a third-party claim for determination of its extent and legal effect to compel indemnity or contribution.

Strangely, there is only one other instance in a tort claim situation where the United States, sued directly, has made the effort it makes here to implead a State by use of the third-party procedure. In that case, United States v. State of Arizona, 9 Cir., 214 F.2d 389, (1954), the Court of Appeals, Ninth Circuit, sensed the constitutional importance of the government contention that it should be allowed in a federal tort claims action, where its liability is established, to recover contribution or indemnity over against a sovereign state. The Court consented (fn. 4) the problem has constitutional aspects of a kind the Court would not run out and meet unless meeting them was necessary for decision. The Court then was able to avoid the issue and did affirm dismissal below of the third-party claim againt the State, restricted to the ground there was no valid claim for relief in the cross-claim inasmuch as the law of Arizona did not permit contribution among tort-feasors in the particular factual context. My reading of this single pertinent opinion impresses me there was little enthusiasm or feeling for the cross-claim suit against the State. The Court in dicta did express its thought the right to recoupment for contribution or indemnity in tort situations of this kind could be asserted in an original suit by the Government against the State filed in a United States District Court. (pgs. 393–394).

■■■ The government in opposition to the motion here devotes a substantial portion of its brief to this right of the United States to sue a sovereign state in a United States District Court. As New York points out, assumedly conceding such right of direct suit, the narrow question present for determination is not that at all, but whether state sovereignty is to be breached in this roundabout fashion of third-party claim in a suit commenced by one of its own citizens directly against the United States under the Federal Tort Claims Act. There is an authority with extensive discussion and thorough search of the legal precedents and pertinent statutory interpreta-

tions that firmly establish jurisdiction in a United States District Court to entertain suits commenced by the United States against a state, regardless of the subject of the controversy. (See United States v. State of California, 9 Cir., 328 F.2d 729, cert. den. 379 U.S. 817, 85 S.Ct. 34, 13 L.Ed.2d 29; 28 U.S.C.A. §§ 1345, 1251(b); Art. III, Section 2, Clause 1, United States Const.). Therefore, this right of the federal sovereign to commence directly and independently a lawsuit against the State in this district court is clear.

The first obvious difference from this settled principle favoring the New York view in this motion is that the action here is not one that has been commenced by the United States. Contained in 28 U.S.C.A. § 1345 is important and precise wording that confers original jurisdiction on the district court of all civil actions when "commenced by the United States." Secondly, the problem must be resolved by interpretation of the language of the federal rule that is invoked to permit the cross-claim. Rule 14(a), by plain and limited words, permits the service of a summons and complaint upon "a person" not a party to the action who is or may be liable to the third-party plaintiff. The words "a person" therein do not in my judgment envelop in any normal sense or meaning a sovereign State in its intended application. The particularized Congressional definition of the word "person" negates indication of such sweep that would include a State by any reasonable implication. (1 U.S.C.A. § 1). A State is not considered a citizen. (Postal Telegraph Cable Co. v. State of Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231).

■■ These statutory and procedural provisions, not difficult to construe, in my opinion, must be measured in the light of strong statements of the Supreme Court that an unconsenting State is immune from federal court suits brought by its own citizens, and the erasure of sovereign immunity by federal legislation is always a matter of gravity and concern. (Parden v. Terminal Ry. of Ala., etc.,

supra). Such immunity of a state from suit by a citizen without its consent is the essence of the inherent nature of sovereignty. (Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 51, 64 S.Ct. 873, 88 L.Ed. 1121). As Mr. Justice White, dissenting and writing for the minority of four said so well for our problem, it should not be easily inferred that Congress, legislating in one area, intended to effect an automatic and compulsary waiver of immunity rights in another. (Parden v. Terminal Ry. of Ala., etc., supra, 377 U.S. at page 198, 84 S.Ct. 1207). Justice White went on to point out the cautions of previous Supreme Court writings that statutes which in general terms divest pre-existing rights or privileges will not apply to the sovereign without express words to that effect, and waiver of sovereign immunity will be found only where stated by the most express language or by such overwhelming implication as would leave no room for any other reasonable construction. (United States v. United Mine Workers, 330 U.S. 258, 272, 67 S.Ct. 677, 91 L.Ed. 884; Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742).

■ It may be that New York in a technical or pleading sense is not being subjected to a suit by one of its own citizens directly, but actual experience teaches that in reality it will be engaged in the pre-trial and trial proceedings to the same extent as though it were. The cleavage between the claims and litigants is unnoticeable at the trial scene. The rule relating to third-party practice is manifestly procedural, and a third-party claim must be regarded as auxiliary and ancillary to the main action. (Entry of Additional Parties in a Civil Action, Holtzoff, J., 31 F.R.D. 101, 105–112). The government may be right in its practical admonition to New York that it might be acting unwisely not to join with it immediately as a comrade in arms for the common defense. However, sovereign legal right should not be made bend to judicious invitation. The worth of Rule 14 and its general purposes out-

lined are clearly just as impressive and useful in litigation involving a third-party State defendant as an individual or company one:

" * * * to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him, and a judgment in his favor against the third-party defendant." (Vol. 3, Moore's Federal Practice, 2nd Ed. pg. 50; quoted in Dery v. Wyer, 2 Cir., 265 F.2d 804, 806–807).

It has been ruled the Federal Rules of Civil Procedure do have the force of federal statute if within the powers delegated to the Supreme Court, but are to be promulgated mainly for practice and procedure in civil actions at law, and shall neither abridge, enlarge nor modify the substantive rights of any litigant. Justice Frankfurter, dissenting, remarked that the Rules are not Acts of Congress and cannot be treated as such, and drastic change to substantive rights should require explicit legislation. (Sibbach v. Wilson & Co. Inc., 312 U.S. 1, 7, 13, 18, 61 S.Ct. 422, 89 L.Ed. 479). The only conclusion I draw from United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523, which the government offers to sustain its position here of cross-claim right is the one stated by the Court as its conclusion at pages 556–557, 71 S.Ct. 399 that the Federal Tort Claims Act carries the government's consent to be sued for contribution not only in a separate proceeding but as a third-party defendant. Surely, the consent of the government in such circumstances where a federal statute has been so construed does not warrant construction of similar consent of the third-party reach to a State, when there is no expression or implication of any kind that can be drawn in such regard.

It is my judgment the waiver of state sovereignty doctrine, so important in our prized system of federalism, is entitled to more deferential treatment than to have immunity from suit taken away by a procedural rule adopted in the interests of speedy and inexpensive determination. It may be in sovereign agreements—and I assume there are thousands entered into daily—in which the federal and state governments join hands to act for the general welfare, there is need for corrective and express legislation or rule to permit expedition of trial on third-party claims. However, I find nothing in existing law or in the agreement as written that would justify a ruling that New York waived its sovereign immunity from suit of its own citizens, or waived or surrendered such immunity to subject itself to impleader in this action under the federal third-party procedures. It seems too casual a method for a procedural rule, inexplicit in its terms, to diminish the State sovereignty.

The motion to dismiss the third-party complaint against New York is granted, and it is

So ordered.