Curtis LEE and Nancy Lee, Plaintiffs,

v.

Milton W.M. YEE et al., Defendants.

Civ. A. No. 82–0705.

United States District Court,
D. Hawaii.

Sept. 17, 1986.

Mark Bennett, Asst. U.S. Atty., for U.S.

George Hom, Deputy Atty. Gen., for State of Hawaii.

---

## DECISION AND ORDER

FONG, Chief Judge.

On August 25, 1986, the court heard argument on the United States' Motion for Contribution from the State of Hawaii. Mark Bennett, Assistant United States Attorney, appeared on behalf of the United States, and George Hom, Deputy Attorney General, appeared for the State of Hawaii. The court, having reviewed the motion and the memoranda in support thereof and in opposition thereto, having heard the oral arguments of counsel, and being fully advised as to the premises herein, finds as follows:

### I

The plaintiffs filed this lawsuit to recover for injuries resulting when on April 21, 1982 the plaintiffs' car was struck from behind by a National Guard jeep driven by Hawaii National Guard Sergeant Milton Yee.

The complaint filed by the plaintiffs on October 19, 1982 in Hawaii State Circuit Court alleged, *inter alia*, that Milton Yee was an employee of the State of Hawaii at the time of the accident, and that the State was therefore liable to the plaintiffs under the doctrine of respondeat superior, citing the Hawaii State Tort Liability Act, Chapter 662 Hawaii Rev.Stat.

In the verified petition for removal, the United States certified that Sergeant Yee was also acting within the scope of his employment as a federal employee at the time of the accident, and the case was removed to the United States District Court for the District of Hawaii pursuant to 28 U.S.C. § 2679(d).

In December 1982, the action against defendant Milton Yee as an individual was dismissed without prejudice. In May 1984, the plaintiffs filed an amended complaint against Sergeant Yee, the State of Hawaii, and the United States. Also in May 1984, the plaintiffs stipulated to the dismissal without prejudice of the State of Hawaii.

In June 1984, the United States answered the complaint, and also filed a third-party complaint against the State of Hawaii. That complaint alleged that the State of Hawaii, as an employer of Sergeant Yee, was liable in contribution for either the full amount, or an appropriate percentage, of any damages assessed against the United States.

On August 6, 1986, all parties to the action agreed to a partial settlement whereby the United States agreed to pay the plaintiffs the sum of $40,000 and in return the plaintiffs agreed to release all parties, including the State of Hawaii. The settlement agreement specifically provided that it would not affect any right to contribution the United States had against the State of Hawaii.

At the time of the hearing on the motion, the United States had subpoenaed Hawaii National Guard Captain Dean Inouye, but made a proffer as to his testimony. The State of Hawaii did not object to the proffer, and thus the Court takes the proffered testimony as true. Neither party offered any other witnesses.

The Court is presented with the question of whether to award the United States contribution against the State of Hawaii, and if so, in what amount.

### II

The initial issue concerns the jurisdiction of this court to determine whether the

United States is or is not entitled to contribution. Hawaii Revised Statutes §§ 662–1 through 662–15, the State Tort Liability Act, set forth the circumstances under which the State of Hawaii has waived sovereign immunity and can be sued for the negligent acts or omissions of its employees.

The State has argued that even if the State is otherwise liable to the United States, Section 662–3 provides that only the courts of the State of Hawaii shall have jurisdiction to hear claims against the State of Hawaii; thus the United States can only seek contribution in the courts of the State of Hawaii.

*Lee v. Brooks*, 315 F.Supp. 729, 730–32 (D.Hawaii 1970), presented the trial court with the same question. In *Lee*, two cars collided, one driven by an employee of the United States, and a second driven by employees of the State of Hawaii. One of the passengers, a State employee, sued the United States pursuant to the Federal Tort Claims Act, and the United States brought a third-party action against the State of Hawaii. The State of Hawaii claimed in that case, as it does now, that the courts of the United States did not have jurisdiction.

The court in *Lee* decided that the United States District Court has jurisdiction over the United States' third-party claim against the State of Hawaii. *Lee*, 315 F.Supp. at 732.

■ The Ninth Circuit has also considered this issue, and stated in dicta that:

The federal government, of course, may sue a state in federal court under any valid cause of action, state or federal, even if the state attempts to limit the cause of action to suits in state courts only. *See United States v. Nevada Tax Commission*, 439 F.2d 435 (9th Cir.1971) However, like any other plaintiff, the federal government must first have a cause of action against the state.

*United States v. State of California*, 655 F.2d 914, 918 (9th Cir.1980). Therefore, Hawaii Revised Statutes § 662–3 does not bar the United States seeking to recover

against the State of Hawaii in the federal courts.

Before the United States District Court will have jurisdiction, however, there must be a valid cause of action. Hawaii Rev. Stat. § 662–2 provides:

The State hereby waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Section 662–1(2) defines employees of the State as including "members of the Hawaii National Guard." Section 662–1(3) provides that acting within the scope of his office or employment in the case of a member of the Hawaii National Guard means "acting in the line of duty."

The United States has contended that at the time of the accident, Milton Yee was acting within the line of duty. The United States argues that if he was, then the State of Hawaii, pursuant to the State Tort Liability Act, would have been liable to plaintiffs had they pursued their suit against the State.

In *Lee v. Brooks*, the court cited a number of decisions by the Hawaii Supreme Court and ruled that a right of contribution exists if "the party from whom contribution is sought is directly liable to the plaintiff." *Lee*, 315 F.Supp., at 732. Hawaii Revised Statutes §§ 663–11 through 663–17 codify the Uniform Contribution Among Tortfeasors Act. Section 663–11 states that the term "joint tortfeasors" means "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."

■ The United States conceded in this action that it was liable in tort to the plaintiffs. If Sergeant Yee was acting within the line of duty as set forth in § 662–1(3) at the time of the accident, then the State would also have been liable to the plaintiffs. Therefore, the State and the United States are joint tortfeasors. Thus, if Ser-

geant Yee was acting in the line of duty at the time of the accident, there is jurisdiction in this court for the United States to seek contribution from the State of Hawaii.

### III

Members of the Hawaii National Guard and of the Hawaii State Guard are included in the statutory definition of the term "employees of the State of Hawaii." Section 662–1(2) Hawaii Rev.Stats.

Section 662–1(3) provides that a member of the Hawaii National Guard or Hawaii State Guard acts within the scope of his office or employment when he acts in the line of duty.

■ The court is satisfied from the state of the affidavits included in the case file as well as the proffered statements of Captain Inouye that Sergeant Yee was acting in the line of duty to benefit the Hawaii National Guard while he was assisting in the recruiting of new members for the Hawaii National Guard when he was returning to his office on the date of the accident. The State of Hawaii has waived its sovereign immunity for torts of its employees. Section 662–2 Haw.Rev.Stat. Milton Yee was an employee of the State of Hawaii within the statutory definition of that term in Section 662–1(3).

### IV

The federal courts must apply federal law in determining whether an individual is a federal employee for purposes of a Federal Tort Claims Act lawsuit (hereinafter "FTCA"). *Brandes v. United States,* 783 F.2d 895 (9th Cir.1986).

■ A person driving a motor vehicle within the scope of his office or federal employment cannot be sued in his individual capacity for injury to or loss of property, personal injury, or death resulting from any alleged tortious act or omission which gave rise to the claim. 28 U.S.C. § 2679(b).

In 28 U.S.C. § 2671, the FTCA defines an employee of the federal government as follows:

"Employee of the government" includes ... members of the National Guard while engaged in training or duty under sections 316, 502, 503, 504, or 505 of Title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently, in the service of the United States, whether with or without compensation.

At the time of the accident, Sergeant Yee was on duty and entitled to be paid pursuant to the provisions of 32 U.S.C. § 503, which is a statute allowing federal payment for certain full-time National Guard personnel.

■ Therefore, at the time of the accident, for purposes of the FTCA, Milton Yee was an employee of the U.S. government, within the statutory definition of 28 U.S.C. § 2671.

Title 28 U.S.C. § 1346(b) provides, in part, that federal district courts have jurisdiction for actions against the United States "[f]or injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment...." In addition, 28 U.S.C. § 2671 states that acting within the scope of his office or employment, for a member of the National Guard, means "acting within the line of duty."

■ The United States has conceded that Sergeant Yee was acting within the line of duty pursuant to 28 U.S.C. § 2671. The State of Hawaii contends that because Sergeant Yee was a federal employee acting in the line of duty, he could not have also been acting in the line of duty pursuant to Hawaii Revised Statute § 662–1(3). The State argued that logic, as well as the 1981 amendments to the Federal Tort Claims Act, mandated this conclusion.

There is no reason why a member of the National Guard could not be acting in the line of duty pursuant to both the FTCA and the State Tort Liability Act. While this court has found no decisions from the Hawaii Supreme Court construing the term

"line of duty" as it is contained in section 662–1(3), the court can look to the definition of the term applied in federal courts.

The Court of Appeals for the Ninth Circuit has stated that "[t]he words 'line of duty' in [28 U.S.C. § 2671] go no further than to invoke the state law of respondeat superior with respect to tort claims arising out of alleged wrongful acts of military personnel." *Bissel v. McElligott*, 369 F.2d 115, 117 (8th Cir.1966); *McCall v. United States*, 338 F.2d 589, 592 (9th Cir.1964).

■ The doctrine of respondeat superior means only that an employer is responsible for the negligent acts of his employees acting within the scope of their employment. *Hulsman v. Hemmeter Development Corp.*, 65 Haw. 58, 61, 647 P.2d 713 (1982).

To decide whether, for purposes of the State Tort Liability Act, Sergeant Yee was acting in the line of duty, the court need look no further than to Sergeant Yee's status and actions at the time of the accident.

Orders issued by the State of Hawaii, Department of Defense, Office of the Adjutant General, provided that at the time of the accident, Milton Yee was an Administrative Supply Technician for the 299th Infantry of the State of Hawaii National Guard.

The proffer as to Captain Dean Inouye's testimony established that Sergeant Yee was under the direct command of Captain Inouye, and through the State of Hawaii Department of Defense, was in the State National Guard line of command, which is headed by the Governor of Hawaii. Of the approximately 130 members in Yee's company, commanded by Captain Inouye, all but four or five are part-time reservists.

Sergeant Yee helped to run the company on a day-to-day basis, in the absence of Captain Inouye, who is also a reservist. Yee helped to make day-to-day decisions for the company. An exhibit, attached to the government's memorandum, described his duties as an Administrative Supply Technician. His duties include activities such as reviewing the work completed by unit personnel to determine compliance with regulations, interviewing persons interested in assignments, reviewing incoming correspondence and publications, determining required action, advising on procedures for enlistment, answering questions on eligibility for promotion, transfer or discharge, receiving and inspecting incoming supplies, instructing and assisting unit personnel in the performance of administrative, supply and clerical duties, maintaining personnel records, and performing other duties as assigned. The written job description comports with Captain Inouye's description of Sergeant Yee's activities in helping to run the company on a day-to-day basis.

At the time of the accident, the Hawaii National Guard was engaged in a reservist recruiting drive. Sergeant Yee had picked up a prospective recruit, Bryson Avilla, from Waianae High School, had driven him to and from Fort Ruger for testing, and was returning to Fort Ruger.

In his deposition, Sergeant Yee testified that he made this trip solely because the National Guard was conducting the recruiting drive, and he was using most of its resources to shuttle prospects back and forth. He also testified that he did not directly answer to any United States Army personnel, and that he was in a uniform issued by the State of Hawaii at the time of the accident.

In addition, he testified that his government driver's license, while a United States government document, had been issued by the National Guard, and that the roster of those with licenses was kept by the National Guard. He also testified that the Governor was in actual control of the National Guard unless the President of the United States actually stepped in. There is no evidence that the President had called up the National Guard on the date of the accident. Sergeant Yee further testified that while he was on full-time training duty ("FTTD"), he was under state rather than federal control. The fact that the legislature had found it necessary to amend the

statute as to the state's non-liability where the United States may also be liable under the FTCA would support the argument that the legislators thought that the statute which was in effect at the time of the accident allowed the state to be sued as an additional defendant even in cases in which the federal government was liable under the FTCA.[1]

Sergeant Yee was acting in the line of duty pursuant to the State Tort Liability Act. The plaintiffs therefore had a direct remedy against the State of Hawaii, which makes the State a direct tortfeasor with the United States. Under the State Uniform Contribution Among Tortfeasors Act, the United States is entitled to contribution from the State of Hawaii.

### V

Under the FTCA, the plaintiff can sue the federal government but not Mr. Yee in his individual capacity. *Noga v. United States*, 411 F.2d 943, 944 (9th Cir.1969). Title 28 U.S.C. § 2679(b) provides that the FTCA is the remedy "exclusive of any other civil action or proceeding by reason of the same subject matter *against the employee or his estate.*" (emphasis added). The statute does not state that a plaintiff with a claim covered by the FTCA would not be able to seek a remedy against a third party.

### VI

Prior to 1981, plaintiffs injured by State National Guard personnel in a federal status were entitled only to an administrative remedy, and only in a limited amount, pursuant to the National Guard Claims Act, 32 U.S.C. § 715. Courts held that National Guard personnel whose units had not been called up to active federal duty, were not employees of the United States, and could not be so considered for Federal Tort Claims Act purposes. *See, e.g., Maryland v. United States*, 381 U.S. 41, 48, 85 S.Ct.

1293, 1298, 14 L.Ed.2d 205 (1965) ("their appointment by state authorities and the immediate control exercised over them by the states makes it apparent that military members of the Guard are employees of the States").

In states which had not waived sovereign immunity or consented to be sued for the negligent acts of their employees, many plaintiffs were left without a remedy. In 1981, Congress acted to change this situation by amending the FTCA to provide that certain National Guard personnel were to be considered federal employees for the purposes of the FTCA.

The preamble to the Act amending the FTCA, Pub.L. No. 97–124, 95 Stat. 1666 (1981), provides that the purpose of the Act is to "extend the Federal tort claims provisions of Title 28, United States Code, to acts or omissions of members of the National Guard, and to provide that the remedy under those provisions shall be exclusive in medical malpractice actions involving members of the National Guard."

The only reference to exclusive remedies is made regarding medical malpractice actions involving members of the National Guard. H.R.Rep. No. 97–384, reprinted in 1981 U.S.Code Cong. & Ad.News 2692, 2696. The Committee report also states that the amendments concern only the "application of the Federal tort claims provisions of [Title 28]. They do not change or modify the application of any other laws governing federal employees...." *Id.*

It is true that both a Congressional Budget Office cost estimate as well as a letter from the Chairman of the House Armed Services Committee, *id.*, at 2698–99, indicate that an argument can be made that the tort claim provisions are to be the exclusive remedy in "medical malpractice actions and proceedings resulting from federally authorized training activities."

---

1. The Hawaii state legislature passed a bill in the session ending in August 1986, which would change Hawaii Rev.Stat. § 662–15 to provide that when the federal government is liable under the FTCA for the acts or omissions of a member of the National Guard, the State can no longer be sued.

Given the language and purpose of the bill, the better interpretation is that the language "medical malpractice actions and proceedings" is to be read as one phrase. No language in the statute indicates an intent to provide an exclusive remedy in "proceedings resulting from federally authorized National Guard training activities."

The letter from the Congressional Budget Office states that the purpose of the bill "establishes that the United States shall have exclusive jurisdiction on claims resulting from National Guard training activities including injury or loss of property, or personal injury or death." *Id.* at 2698. This language is unambiguous. However, it is merely a letter from the Congressional Budget Office, rather than a committee report, and is not incorporated in the bill, its preamble, or the Committee report on the bill.

Because the plaintiffs had a right to sue the State of Hawaii, the United States likewise has a right to sue the State. The 1981 amendments would change the situation only if the statute which Congress passed extinguished the rights of plaintiffs to sue individual states. The legislative history does not convincingly support the proposition that Congress passed the bill with such a drastic intent.

Also, Congress could easily have articulated its intent if it had intended to insulate states from liability. Congress has often expressly stated its intent in similar situations. For example, 28 U.S.C. § 2679(b) provides that a federal employee who injures another in an auto accident may not be sued directly. Similarly, 10 U.S.C. § 1089(a) provides that military doctors and other medical personnel may not be sued directly; the only remedy is against the United States. And, 10 U.S.C. § 1089 was specifically changed by the 1981 amendments so as to provide immunity to National Guard doctors and other medical personnel.

The State cites 28 U.S.C. § 2679(a), arguing that the section provides that FTCA remedies are exclusive. However, that section merely provides that in Federal Tort Claims Act cases only the United States can be sued, and not agencies, instrumentalities, or departments of the United States. See *Stewart v. United States*, 503 F.Supp. 59, 61 (N.D.Ill.1980), *aff'd*, 659 F.2d 1084 (7th Cir.1981); *Safeway Portland Employees Federal Credit Union v. Federal Deposit Insurance Corp.*, 506 F.2d 1213 (9th Cir.1974). Therefore, the 1981 amendments to the Federal Tort Claims Act do not bar this motion by the United States for contribution.

## VII

The Uniform Contribution Among Tortfeasors Act, Hawaii Rev.Stat. § 663–11, *et seq.*, provides that "joint tortfeasors" means "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against some or all of them."

Hawaii Revised Statutes § 663–12 provides that a joint tortfeasor "who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement." That section is not applicable in the case at bar, because the settlement of this case did extinguish the State of Hawaii's liability to the plaintiffs. The settlement, into which the state also entered, provided that $40,000 was a fair and reasonable amount. The plaintiffs' settlement does not bar contribution merely because it extinguished the plaintiffs' right of recovery against the State of Hawaii as well as against the United States government.

Section 663–12 provides:

When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degree of fault of the joint tortfeasors shall be con-

sidered in determining their pro rata shares, subject to Section 663–17.

Additionally, Section 663–17(c) states:

As among joint tortfeasors who in a single action are adjudged to be such, the last paragraph of section 663–12 applies only if the issue of proportionate fault is litigated between them by pleading in that action.

This paragraph applies only if the United States litigated the issue of proportionate fault, which it has in this lawsuit. In its third-party complaint in this case, the United States alleged that liability was either joint or solely the responsibility of the State of Hawaii.

In *Mitchell v. Branch,* 45 Hawaii 128, 363 P.2d 969, 978 (1961), the Hawaii Supreme Court stated that the primary purpose of this section of the Uniform Contribution Among Tortfeasors Act is to ensure that the "most culpable party should sustain that share of the loss which is commensurate with his degree of fault."

It would be rather inexact to say that the State of Hawaii was more responsible than the United States for the occurrence of the accident. But, where both tortfeasors are liable only as a result of the acts of a common employee, the court will examine the degree of control each exercised over the employee, and to consider whose interests the employee was furthering at the time of the accident.

The State of Hawaii presented no evidence regarding any federal control that was being exercised over Sergeant Yee. The only support for the State's argument concerning Yee's relationship to the federal government is that he was being paid by the federal government and was on FTDD status at the time of the accident.

However, the evidence demonstrated that Yee was performing his duties solely for the benefit of the State of Hawaii. The Governor of the State of Hawaii exercises control over the Hawaii National Guard. Section 121–5 Haw.Rev.Stat. provides:

The Governor shall be the commander in chief of the forces comprising the militia. He is authorized to promulgate such rules, regulations, and forms therefor as are not inconsistent with law, and to carry into full effect the law relative thereto.

Further indication of the Governor's power to control the National Guard is given in Hawaii Rev.Stat. § 121–6, which provides that the Governor may "organize, alter, divide, annex, consolidate, and reorganize" the National Guard, and Article IV, § 5 of the Hawaii Constitution, which provides that the Governor is the Commander-in-Chief of all the armed forces of the State.

Sections 121–7 through 121–10 of Hawaii Revised Statutes provide that the Adjutant General of the State of Hawaii shall be the Executive Officer of the National Guard, and responsible for its operation.

The Adjutant General, who heads the State Department of Defense, Hawaii Rev. Stat. § 26–21, is appointed by the Governor. Hawaii Constitution, Article IV, § 6; Hawaii Rev.Stat. § 26–31.

There is such a disproportion of responsibility and accountability between the United States and the State of Hawaii as to render inequitable an equal distribution of the common liability among them. The court is therefore required to determine their relative degrees of fault.

■ No evidence has been presented to the court of any federal function which Sergeant Yee was performing at the time of the accident. It appears that his services provided the primary benefit to the State of Hawaii. Therefore, it would be equitable to apportion the fault 90% to the State of Hawaii and 10% to the United States.

The State of Hawaii has represented to the Court that it cannot pay any judgment until the Hawaii Legislature approves an appropriation for that purpose. Accordingly, and by reason of the United States' agreement at the hearing, the State of Hawaii will be allowed an extension until July 31, 1987 to pay its 90% proportionate share, or $36,000, contribution to the United States. Failure of the State to pay its

share by close of business on that date will accord the United States its reserved right to apply to this court for assessment of interest against the State of Hawaii on the $36,000 payable to the United States.

▮ The United States has previously requested the $40,000 payable to the plaintiffs from the General Services Administration, and it represented at the hearing that the entire sum will be forthcoming within sixty days. Under Hawaii Rev.Stat. § 663–12, the right of the United States to receive the contribution payment shall not accrue until it has actually paid the plaintiffs. The United States shall file a notice with the court when it has paid the plaintiffs, and shall send a copy of this notice to the State.

As the United States will be paying the plaintiffs the entire $40,000, judgment is hereby entered against the State of Hawaii and in favor of the United States for 90% of $40,000, in the amount of $36,000, payable without additional interest on or before July 31, 1987.

IT IS SO ORDERED.